**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

**LUIS ENRIQUE NÚÑEZ MAGALLÓN,**
**ROCIO FARIAS LOPEZ, and**
**MARÍA TERESA NÚÑEZ MAGALLÓN,**
*Petitioners,*

Civil Case No. 26-6550

V

**JAMES JANECKA**, Facility Administrator / Warden, Adelanto ICE Processing Center, in his or her official capacity;
**THOMAS GILES**, FIELD OFFICE DIRECTOR, LOS ANGELES FIELD OFFICE, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, in his or her official capacity;
**MARCOS CHARLES**, ACTING EXECUTIVE ASSOCIATE DIRECTOR, ICE ENFORCEMENT AND REMOVAL OPERATIONS, in his or her official capacity;
**CHARLES WALL**, PRINCIPAL LEGAL ADVISOR, ICE OFFICE OF THE PRINCIPAL LEGAL ADVISOR, in his or her official capacity;
**MARKWAYNE MULLIN**, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, in his or her official capacity;
**DAVID J. VENTURELLA**, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, in his or her official capacity; and
**TODD BLANCHE**, ATTORNEY GENERAL OF THE UNITED STATES, in his or her official capacity,
**JOHN DOE**, Immediate Custodian of Petitioner, in his or her official capacity
*Respondents.*

______________________________________________/

# PETITION FOR A WRIT OF *HABEAS CORPUS* UNDER 28 U.S.C. § 2241

*Expedited Consideration Requested. Petitioners Remain in Federal Immigration Custody Following Their Prior Authorized Release and Subsequent Re-Detention.*

*Relief Requested Within Seven Days*

*Preservation of Jurisdiction Requested and Preliminary Injunctive Relief Requested*

**NOW COMES** Petitioners, LUIS ENRIQUE NÚÑEZ MAGALLÓN, ROCIO FARIAS LOPEZ, and MARÍA TERESA NÚÑEZ MAGALLÓN, by and through undersigned counsel, and petition this Honorable Court for a writ of *habeas corpus* under 28 U.S.C. § 2241, and state:

## I. INTRODUCTION

1. Petitioners Luis Enrique Núñez Magallón ("Mr. Núñez Magallón"), his wife Rocio Farias Lopez ("Ms. Farias Lopez"), and his sister María Teresa Núñez Magallón ("Ms. Núñez Magallón") are citizens of Mexico who fled Michoacán after the criminal organization known as La Familia Michoacana extorted their family and murdered Ms. Núñez Magallón's husband. The Department of Homeland Security paroled them into the United States after they requested humanitarian parole in **December 2021**, and they have lived in the community since, with a sponsor in

Fontana, California. Their applications for asylum are pending before United States Citizenship and Immigration Services. On **September 25, 2026**, officers of United States Immigration and Customs Enforcement arrested all three of them. They have had no bond hearing. They are held at the Adelanto ICE Processing Center in Adelanto, California.

2. This Petition asks this Honorable Court to act now. The detention is unlawful. Respondents have served no custody determination and may move Petitioners at any time to a circuit whose courts read the detention statutes differently from the Ninth Circuit. No administrative remedy exists at the moment, and none that later opened would be adequate, and this Honorable Court should keep Petitioners within this District while it decides the Petition (Count I). Time matters: Mr. Núñez Magallón has diabetes and requires regularly scheduled dialysis, and Ms. Núñez Magallón is deaf and cannot take part in any process affecting her liberty without effective communication accommodations.

3. The arrests were made without the process the law prescribes. Section 1226(a) authorizes arrest "[o]n a warrant"; an interior arrest without one is permitted only when the alien is likely to escape before a warrant can be obtained; and a custody determination is required within forty-eight (48) hours. Respondents have produced no warrant, could not have believed that three (3) people who had lived openly for years at a known address, with asylum applications pending before another component of the Department, were likely to escape, and have made no custody

determination (Count II). Respondents have identified no date on which Petitioners' parole ended. If it expired, the arrests years later were new arrests that required that process; if it continued, it has never been terminated by the written notice the regulations require (Count III). Either way Respondents omitted a step their own regulations make a condition of custody (Count IV).

4. The detention is governed by 8 U.S.C. § 1226, not § 1225(b). Under *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026), an alien present in the interior is detained under § 1226, and Petitioners were seized in the interior years after they were paroled into the country. They are not arriving aliens (Count V). No class of § 1226(c)(1) describes them, because none has been charged with, arrested for, or convicted of any offense, and they are entitled to the custody determination that § 1226(a) provides (Count VI).

## II. JURISDICTION AND VENUE

### A. This Honorable Court has jurisdiction.

5. This Honorable Court has jurisdiction under 28 U.S.C. §§ 2241 and 1331 and under Article I, Section 9, Clause 2 of the Constitution. Petitioners are in custody under the authority of the United States and contend that their custody violates the laws of the United States. 28 U.S.C. § 2241(c)(3). Each count states an independent

ground for relief; should this Honorable Court conclude that it lacks jurisdiction over any count, Petitioners ask that it decide the others.

6. Section 1252(g) of Title 8 does not apply. It reaches only three (3) discrete actions: the decisions to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Petitioners do not ask Respondents to exercise discretion in their favor. They do not ask this Honorable Court to adjudicate their asylum applications, to review the merits of any removal proceeding, or to vacate any order of removal. They challenge the process by which they were taken into custody and the statutory authority for their confinement (Counts I through V) and the application of § 1226(c) to them (Count VI).

7. Nor does 8 U.S.C. § 1226(e) apply. It withdraws review of "discretionary judgment[s]" about detention and release, not of a petition that "challenges the statutory framework that permits his detention without bail." *Demore v. Kim*, 538 U.S. 510, 516-17 (2003). Whether Respondents followed the prescribed procedures (Counts II through IV), which statute governs the detention (Count V), and whether Petitioners fall within § 1226(c) (Count VI) are questions of law.

8. Nor does 8 U.S.C. § 1252(a)(2)(B)(ii) bar Counts III and IV. They do not ask this Honorable Court to review a decision to terminate parole; they ask whether Respondents complied with the procedures their regulations make a condition of terminating it. A court "can enforce the parole termination rule's procedural

requirement without dictating whether parole should or should not be terminated as a matter of discretion," and § 1252(a)(2)(B)(ii) "therefore, does not strip the Court of subject-matter jurisdiction." *Marcano v. Jamison*, No. 26-239, 2026 U.S. Dist. LEXIS 13929, at *6 (E.D. Pa. Jan. 26, 2026).

**B. Venue lies in the Eastern Division.**

9. "[F]or core *habeas* petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). Petitioners are detained at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California (¶¶ 25-26). San Bernardino County lies within the Eastern Division of the Central District of California. 28 U.S.C. § 84(c)(1).

**C. The Parties.**

10. Petitioner LUIS ENRIQUE NÚÑEZ MAGALLÓN is a native and citizen of Mexico, alien registration number A246-082-983. (Ex. 1.) He has diabetes and requires regularly scheduled dialysis. He is in the physical custody of Respondents at the Adelanto ICE Processing Center (¶¶ 25-26).

11. Petitioner ROCIO FARIAS LOPEZ is a native and citizen of Mexico, alien registration number A246-082-984, and the wife of Mr. Núñez Magallón. She is in the physical custody of Respondents at the Adelanto ICE Processing Center (¶¶ 25-26).

12. Petitioner MARÍA TERESA NÚÑEZ MAGALLÓN is a native and citizen of Mexico, alien registration number A246-082-986, and the sister of Mr. Núñez Magallón. She is deaf and does not communicate orally. She is in the physical custody of Respondents at the Adelanto ICE Processing Center (¶¶ 25-26).

13. Respondent JAMES JANECKA, Facility Administrator and Warden of the Adelanto ICE Processing Center, is Petitioners' immediate custodian. "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Padilla*, 542 U.S. at 435. Petitioners also name Respondent JOHN DOE, the immediate custodian of Petitioners, in the alternative, in case the official exercising immediate physical custody is not the one identified, and will amend the caption when that official is confirmed.

14. Respondent THOMAS GILES is the Director of the Los Angeles Field Office, Enforcement and Removal Operations ("ERO"), U.S. Immigration and Customs Enforcement ("ICE"), which exercises supervisory authority over the detention operations that hold Petitioners. Respondent MARCOS CHARLES is the Acting Executive Associate Director of ICE ERO. Respondent CHARLES WALL is the Principal Legal Advisor of the ICE Office of the Principal Legal Advisor. Respondent DAVID J. VENTURELLA is the Senior Official Performing the Duties of the Director of ICE. Respondent MARKWAYNE MULLIN is the Secretary of Homeland Security. Respondent TODD BLANCHE is the Attorney General of the

United States. Each is sued in his or her official capacity. They are named because the writ runs "to the person having custody of the person detained," 28 U.S.C. § 2243, and because "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Padilla*, 542 U.S. at 441.

## III. STATEMENT OF FACTS:

### A. Persecution, request for humanitarian parole, and release.

15. Petitioners are Mexican nationals from Michoacán. Beginning in **2016**, armed members of the criminal organization known as La Familia Michoacana extorted Mr. Núñez Magallón and his brother-in-law, Francisco Márquez Contreras, the husband of Ms. Núñez Magallón, at the family-owned food stand, and threatened the family with violence if their demands were not met.

16. On **February 2, 2017**, Mr. Márquez Contreras was abducted, tortured, and murdered after the family could not satisfy the demands. Petitioners continued to receive threats, including warnings that cartel members intended to find and kill them, and abandoned their homes to seek safety elsewhere in Mexico.

17. In **June 2021** Petitioners fled to Tijuana, Mexico. Fearing that the cartel would locate them there, they sought humanitarian protection in the United States: in

**December 2021** they requested humanitarian parole and identified a sponsor residing in Fontana, California, who was willing to support them.

18. Petitioners presented themselves at the San Ysidro Port of Entry on or about **October 16, 2022**, as the Notices to Appear issued to Ms. Farias Lopez and Ms. Núñez Magallón allege (Ex. 2), and the Department paroled them into the United States under 8 U.S.C. § 1182(d)(5)(A) and released them. Parole under that section is granted for a limited period, 8 C.F.R. § 212.5(e)(1), and Respondents have produced no document stating the period of Petitioners' parole. Petitioners joined their sponsor in California.

19. Respondents have not identified the date on which the parole ended, and no document available to counsel states it. Petitioners did not depart. No document in Petitioners' possession, none served on them to counsel's knowledge before **September 25, 2026**, and none produced by Respondents extends, revokes, terminates, or otherwise addresses the parole. In particular, no written notice of termination of parole was served on any Petitioner before the arrests, and none has been provided to counsel. Consequently, if the parole ended, it ended through automatic expiration or, at the earliest, through the charging documents Respondents issued on the day of the arrests (¶ 27).

**B. For nearly four (4) years Petitioners lived openly at a known residence, complied with every requirement imposed on them, and pursued asylum, so they are not a flight risk.**

20. After their release Petitioners lived in the community, with the support of their sponsor in Fontana, California, subject to the immigration requirements imposed on them. They complied with those requirements, kept a known residence, and remained available to the Department. The Notices to Appear [hereinafter, "NTAs"] issued to Ms. Farias Lopez and Ms. Núñez Magallón list the same residence in San Bernardino, California (Ex. 2), an address the Department therefore knew. The record identifies no violation of the conditions of their release and no arrest or conviction of any Petitioner.

21. Each Petitioner has an application for asylum pending before United States Citizenship and Immigration Services [hereinafter, "USCIS"]; USCIS's Form I-797C notice to Mr. Núñez Magallón dated **February 11, 2023** confirms his Form I-589 filing. (Ex. 2.) The Department; therefore, had, at all times, on record where Petitioners lived and that they were actively seeking protection from the United States government.

**C. Mr. Núñez Magallón's dialysis needs and Ms. Núñez Magallón's deafness make detention and any transfer especially harmful, and the family's ties to Fontana confirm that they are not a flight risk.**

22. Mr. Núñez Magallón has diabetes and requires regularly scheduled dialysis and ongoing medical supervision. An interruption of dialysis or of diabetes

management exposes him to serious risk to his health, according to information provided to counsel.

23. Ms. Núñez Magallón is deaf and does not communicate orally. She requires effective communication accommodations to understand information about her custody, to communicate with counsel, and to take part in proceedings that affect her liberty.

24. Ms. Farias Lopez is Mr. Núñez Magallón's wife, and Ms. Núñez Magallón is his sister. The three share a family life and a sponsor in Fontana, California.

**D. The arrests of September 25, 2026, were warrantless and arbitrary.**

25. On **September 25, 2026**, ICE officers arrested all three (3) Petitioners in the interior of the United States while they were travelling in their vehicle. Petitioners were not at a port of entry, were not applying for admission, and were not seeking anything from the United States. According to information provided to counsel, the arrests were made without immigration arrest warrants, and no warrant was shown to Petitioners. No warrant of arrest has been provided to counsel, and Respondents have produced none.

26. Petitioners were taken to the Adelanto ICE Processing Center in Adelanto, California, and remain confined there.

27. On **September 25, 2026**, the day of the arrests, Respondents issued Notices to Appear (Form I-862) to Ms. Farias Lopez and to Ms. Núñez Magallón. (Ex.

2.) Each checks the box "You are an arriving alien" and alleges that the Petitioner applied for admission into the United States at the San Ysidro Port of Entry on or about **October 16, 2022**. Mr. Núñez Magallón has received a Notice of In-Person Hearing from the Adelanto Immigration Court setting a master calendar hearing for **November 5, 2026**.

28. Since the arrests there is no evidence that any Petitioner has been served with a Form I-286, Notice of Custody Determination, or a Form I-200, Warrant of Arrest, and none has been provided to counsel. No custody determination was made within forty-eight (48) hours of the arrests or since. No Petitioner has had a bond hearing. No officer has made any individualized finding that a Petitioner is a danger, a risk of flight, or a person likely to escape before a warrant could be obtained. Counsel has no record that any Petitioner was examined by an officer other than the arresting officer, or was advised, in a form that Petitioner could understand, of the reasons for the arrest and of the right to be represented at no expense to the Government. This is in direct violation of ICE's own procedures and; therefore, in violation of the Administrative Procedures Act [hereinafter, the "APA."]

29. According to information provided to counsel, the detention has raised concerns about Mr. Núñez Magallón's access to dialysis and necessary medical treatment and about the communication accommodations Ms. Núñez Magallón requires.

30. Respondents have given no assurance that Petitioners will remain at Adelanto. No rule requires them to notify counsel or this Honorable Court before moving Petitioners to another facility, in this District or in another circuit.

## IV. THE GOVERNING FRAMEWORK REQUIRES IMMEDIATE RELEASE

### A. Section 1226(a) permits release on bond; section 1226(c) is the exception.

31. "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.' § 1226(a). 'Except as provided in subsection (c) of this section,' the Attorney General 'may release' an alien detained under § 1226(a) 'on bond . . . or conditional parole.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). "Section 1226(c), however, carves out a statutory category of aliens who may not be released under § 1226(a)." *Id.* at 289. An alien detained under § 1226(a) who is not within § 1226(c) may seek a custody redetermination before an Immigration Judge. See 8 C.F.R. § 1236.1(d)(1).

32. Section 1226(c)(1) describes five classes:

(A) an alien inadmissible under § 1182(a)(2);

(B) an alien deportable under § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D);

(C) an alien deportable under § 1227(a)(2)(A)(i) and sentenced to at least one year;

(D) an alien inadmissible or deportable on the terrorism grounds; and (E), added by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), an alien who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a)" and who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(A)-(E). The provision reads:

> (1) Custody. The Attorney General shall take into custody any alien who— (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title, (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title, (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when

> the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.8 U.S.C. § 1226(c)(1).

None of the five classes in § 1226(c)(1) describes Petitioners: classes (A) through (D) require an enumerated offense or a terrorism ground, and the record shows neither; classes (B) and (C) also require an alien who is "deportable," which presupposes an admission that Petitioners, who were paroled, never received; and class (E) requires a charge, arrest, or conviction for an enumerated offense, and no Petitioner has one (Count VI).

Accordingly, because none of the classes in § 1226(c)(1) applies to Petitioners, they are not subject to mandatory detention, and, as these were warrantless arrests, the Government has identified no lawful authority for their continued detention. Petitioners must therefore be released.

**B. Section 1225(b) governs the border; section 1226 governs the interior, and the circuits are divided.**

33. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Its subsection (b)(2)(A) provides that, in the case of an "applicant for admission," if the examining immigration officer determines that an alien "seeking admission" is not clearly and beyond a doubt entitled to be admitted, the alien "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Detention under § 1225(b) carries no bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 297, 300-03 (2018).

34. The Ninth Circuit has held that aliens present without admission who are apprehended in the interior of the United States are detained under § 1226, not §

1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 10, 25-26 (9th Cir. July 30, 2026). The court reasoned that "seeking admission" describes the affirmative act of seeking entry at the border or a port of entry; that an alien who is deemed an "applicant for admission" by § 1225(a)(1) is not thereby in a perpetual state of seeking admission, consistent with *Torres v. Barr*, 976 F.3d 918, 927-28 (9th Cir. 2020) (en banc); and that § 1226(a), by its terms, reaches aliens present in the interior whether or not they were admitted. *Rodriguez Vazquez v. Bostock*, No. 25-6842, slip op. at 29-31, 35-37, 49-51 (9th Cir. July 30, 2026).

35. The Board of Immigration Appeals [the "BIA"] adopted the government's reading in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), a rule the Ninth Circuit has rejected for aliens seized in the interior. *Rodriguez Vazquez*, slip op. at 21. Decisions of the Board and of the Attorney General bind Immigration Judges. 8 C.F.R. § 1003.1(g)(1)-(2).

36. Accordingly, Petitioners [entered the United States without inspection and were arrested in the interior long after their entry, and therefore] are detained under 8 U.S.C. § 1226(a), not § 1225(b)(2)(A). Under *Yajure Hurtado*, however, the Immigration Judge lacks jurisdiction to conduct a custody redetermination hearing, and the Board's decisions bind Immigration Judges. 8 C.F.R. § 1003.1(g)(1)-(2). Any request for bond, or any appeal to the Board, would therefore be futile. Petitioners have no adequate remedy other than this Court and are entitled to the relief requested below

## V. CLAIMS FOR RELIEF

### COUNT I
### *HABEAS* RELIEF MUST BE IMMEDIATE: NO ADMINISTRATIVE REMEDY EXISTS, NONE WOULD BE ADEQUATE, AND PETITIONERS MAY BE TRANSFERRED AT ANY TIME

37. Petitioners reallege the paragraphs *supra*.

**A. The rule: exhaustion under section 2241 is prudential, and it presupposes a remedy that exists and is adequate.**

38. Section 2241 contains no exhaustion requirement. In this Circuit exhaustion in a § 2241 proceeding is a prudential rule, not a jurisdictional one, and it is excused where the remedy is inadequate, where resort to it would be futile, or where irreparable injury would result. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012); *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004). The Supreme Court has identified three circumstances in which the individual's interest in immediate judicial consideration outweighs the institutional interest in exhaustion: where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action," including where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim"; where the remedy "may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief'"; and where "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 146-48 (1992). Each is present.

**B. No administrative remedy exists today.**

39. The only administrative route to a custody hearing runs through a custody determination by the Department. An Immigration Judge may review "[c]ustody and bond determinations made by the service," 8 C.F.R. § 1003.19(a), on application made "[a]fter an initial custody determination by the district director," *id.* § 1236.1(d)(1), "to the Immigration Court having jurisdiction over the place of detention," *id.* § 1003.19(c)(1). Respondents have served no custody determination (¶ 28). There is no determination to review and no stated basis to contest. Notices to Appear are dated September 25, 2026 and a master calendar hearing is set for Mr. Núñez Magallón on November 5, 2026 (¶ 27), but counsel is aware of no bond request pending before an Immigration Judge and of no custody determination that accompanied those documents. That is the second circumstance *McCarthy* describes: no administrative body has been engaged on Petitioners' custody at all (¶ 38).

**C. A request to an Immigration Judge would be futile, because binding precedent forecloses the relief.**

40. Even if Respondents served a custody determination tomorrow, a bond request before an Immigration Judge would be futile under the classification Respondents have assigned. Decisions of the Board of Immigration Appeals and of the Attorney General "are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States," and precedent decisions "serve as precedents in all proceedings involving the

same issue or issues." 8 C.F.R. § 1003.1(g)(1)-(2). If Respondents classify Petitioners as arriving aliens, the regulations withdraw the Immigration Judge's authority over their custody altogether. 8 C.F.R. §§ 1003.19(h)(2)(i)(B), 1236.1(c)(11). Petitioners were paroled. Respondents, whether they are correct or not, will therefore treat them as aliens detained under § 1225(b), and the Attorney General has held that such an alien "is ineligible for release on bond" and "must be detained until his removal proceedings conclude, unless he is granted parole," *Matter of M-S-*, 27 I&N Dec. 509, 509 (A.G. 2019), that this is so "whether they are arriving at the border or are apprehended in the United States," *id.* at 515, and that the regulation listing the classes ineligible for bond "does not provide an exhaustive catalogue of the classes of aliens who are ineligible for bond," *id.* at 518. An Immigration Judge may not depart from those decisions, and the Attorney General ordered that the alien in *M-S-* "must be detained until his removal proceedings conclude" unless paroled. *Id.* at 519.

41. The relief Petitioners would request, a determination that § 1226(a) governs their detention and a hearing on bond, is therefore relief the Immigration Judge has been told he lacks authority to grant unless Respondents themselves concede that § 1226(a) applies, and Respondents, who have detained Petitioners without any custody determination, have conceded nothing. Requiring Petitioners to file the request would serve no purpose: "the administrative body" has "predetermined the issue before it," and the remedy is inadequate "because of some doubt as to whether the agency was empowered to grant effective relief" (¶ 38). Courts have

excused exhaustion on that ground. See *Fonseca v. Ripa*, No. 3:26-cv-309-MMH-MCR, 2026 U.S. Dist. LEXIS 87078, at *5-6 (M.D. Fla. Apr. 21, 2026); *Aguilar v. Hardin*, No. 2:26-cv-1456-KCD-DNF, 2026 U.S. Dist. LEXIS 116084, at *1 n.2 (M.D. Fla. May 27, 2026) ("We do not require petitioners to run administrative obstacle courses when the finish line is preemptively blocked."); *Gonzalez v. Warden*, No. 3:26-cv-535-MMH-PDB, 2026 U.S. Dist. LEXIS 112429, at *2 (M.D. Fla. May 21, 2026); *Mendes v. Ripa*, No. 3:26-cv-118-JEP-PDB, 2026 U.S. Dist. LEXIS 110023, at *2 n.2 (M.D. Fla. May 19, 2026) (excusing exhaustion because the Board "had 'predetermined' the issue").

**D. A remedy that later opened would be inadequate, because Respondents choose its forum and its law, and a transfer would change both.**

42. A custody application is made to "the Immigration Court having jurisdiction over the place of detention," 8 C.F.R. § 1003.19(c)(1), and Respondents alone decide where that place is. The right Petitioners assert is the law of this Circuit. The Ninth Circuit has held that § 1225(b)(2)(A) does not reach aliens seized in the interior (¶ 34), but the Fifth and Eighth Circuits hold otherwise (¶ 35). In the Fifth Circuit an alien who "entered illegally many years ago" is "presently seeking admission," and is detained under § 1225(b)(2)(A) without eligibility for bond. *Buenrostro-Mendez*, 166 F.4th at 498, 502. A transfer to a facility in either circuit would change the law applied to Petitioners without changing a single fact about them; the Government would characterize the detention as detention under §

1225(b)(2)(A), and every court there would be bound to agree. No rule requires Respondents to notify counsel or this Honorable Court before transferring Petitioners (¶ 30). A remedy whose existence, forum, and governing law are each fixed by the detaining party, and which that party can extinguish by moving the detainees across a circuit line, is not one a habeas petitioner must await (¶ 40).

43. A transfer would also prejudice this action without making the detention more lawful. The proper respondent is the immediate custodian (¶ 13); although this Honorable Court's jurisdiction would survive a transfer (¶ 14), every order would then have to be executed through officials at a distance from this Honorable Court, against detainees who could be moved again. Mr. Núñez Magallón's dialysis schedule and Ms. Núñez Magallón's communication accommodations would have to be re-established at each new facility. That is the first circumstance *McCarthy* describes: prejudice to the court action itself, and irreparable harm from delay (¶ 38).

**E. Consequence: this Honorable Court should preserve its ability to grant relief.**

44. Jurisdiction to decide is not the same as the ability to grant effective relief, and a court may enjoin the parties before it, and their officers, agents, and employees, to preserve that ability. See Fed. R. Civ. P. 65(d)(2). A preliminary injunction requires a showing that the movant "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

45. Each element is met. Counts II through IV rest on the text of §§ 1226(a) and 1357(a)(2), on regulations Respondents have not followed, and on the settled rule that an agency must follow its own regulations; Counts V and VI rest on *Rodriguez Vazquez*, on the text of §§ 1226(c), 1227(a), and 1101(a)(13), and on a record that contains no charge, arrest, or conviction of any Petitioner. The harm is irreparable: the Ninth Circuit held that Congress has not authorized the no-bond detention of unadmitted aliens seized in the interior, other circuits hold otherwise (¶ 35), and days of confinement lost while the threshold question was relitigated elsewhere could not be restored. For Mr. Núñez Magallón, who requires dialysis, and for Ms. Núñez Magallón, who requires communication accommodations, the harm is also one that no later proceeding can repair (¶¶ 22-23). An order that Petitioners not be moved from this District imposes no burden beyond housing them where they already are and restrains no removal proceeding (¶ 30). The public interest lies in having the lawfulness of a detention decided by the court in which the detainees are held and the petition is filed, under the law of the circuit in which both events occur.

46. Section 2243 directs the Court to "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted," returnable within three days unless good cause is shown for a longer period not exceeding twenty days. 28 U.S.C. § 2243. The Supreme Court has also confirmed that

the right to seek habeas relief carries a right to notice sufficient to make it real: notice "must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue" before the Government acts. *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (per curiam). Petitioners ask that Respondents be ordered not to transfer them from the Central District of California while this Petition is pending, and to give counsel and this Honorable Court forty-eight hours' written notice before any proposed transfer. In the alternative, Petitioners ask that Respondents be ordered not to remove them from the United States while this Petition is pending and to inform counsel, before relocating any Petitioner, of where and when the Petitioner is being moved.

## COUNT II
## THE ARRESTS OF SEPTEMBER 25, 2026 WERE MADE WITHOUT A WARRANT, AND THE CUSTODY DETERMINATION THAT THE STATUTE, THE REGULATIONS, AND DUE PROCESS REQUIRE DID NOT OCCUR

47. Petitioners reallege the paragraphs *supra*.

### A. The rule: an interior arrest requires a warrant, or a statutory ground for proceeding without one, and a custody determination within forty-eight (48) hours.

48. Section 1226(a) authorizes arrest and detention pending a decision on removal only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). The provision reads:

> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General— (1) may continue to detain the arrested alien; and (2) may release the alien on— (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole; . . . .

8 U.S.C. § 1226(a). As the Attorney General has read it, "Section 236, however, permits detention only on an arrest warrant issued by the Secretary." *M-S-*, 27 I&N Dec. at 515. An alien "may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest," which "may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter." 8 C.F.R. § 236.1(b)(1); accord *id.* § 1236.1(b)(1). Congress permitted an arrest without a warrant in two (2) situations, and only one of them concerns an alien already inside the country. Section 1357(a)(2) authorizes an officer, without warrant,

> to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.8 U.S.C. § 1357(a)(2).

For an alien in the United States, then, the condition is that the officer have reason to believe he "is likely to escape *before* a warrant can be obtained for his

arrest.” The regulations repeat it: “A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.” 8 C.F.R. § 287.8(c)(2)(ii). An officer who arrests without a warrant “shall adhere to the procedures set forth in 8 CFR 287.3.” *Id.* § 287.8(c)(2)(iv). At the time of the arrest the officer must also, as soon as it is practical and safe, identify himself or herself as an immigration officer authorized to make an arrest and state that the person is under arrest and why. *Id.* § 287.8(c)(2)(iii).

49. Under those procedures the alien “will be examined by an officer other than the arresting officer,” 8 C.F.R. § 287.3(a); “will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government,” *id.* § 287.3(c); and “a determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time, whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued,” *Id.* § 287.3(d).

50. These requirements implement a constitutional command. “Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects,” and the Clause “applies to all ‘persons’ within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.” *Zadvydas v. Davis*, 533 U.S. 678, 690,

693 (2001). The rules by which the Government takes an alien into custody "are designed to protect the interests of the alien and to afford him due process of law," and "[m]eticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness." *Bridges v. Wixon*, 326 U.S. 135, 152, 154 (1945).

**B. Application: whichever way the arrests were made, a required step was omitted.**

51. If warrants issued, Respondents have not produced them or identified the officers who issued them (¶¶ 25, 28). If none issued, the arrests were lawful only if the officers had reason to believe that each Petitioner was "likely to escape before a warrant can be obtained" (¶ 48). Three people who had lived openly in the community for years, with a sponsor and a known residence, whose asylum applications were pending before another component of the Department, and who had complied with the conditions of their release, are not such persons (¶¶ 20-21). Respondents have asserted no such likelihood and the record contains no finding of one (¶ 28). Nothing in the record suggests that Mr. Núñez Magallón, who requires dialysis, or Ms. Núñez Magallón, who is deaf, could have fled before a warrant was obtained (¶¶ 22-23). Where the Government can feasibly provide process before it deprives a person of liberty, "it generally must do so regardless of the adequacy of a postdeprivation" remedy. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

52. Whichever way the arrests were made, the regulation required a determination within forty-eight (48) hours "whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued" (¶ 49). No emergency has been asserted. The forty-eight (48) hours have long passed. No custody determination has been served and no warrant has been produced (¶ 28). The Notices to Appear dated **September 25, 2026** are charging documents; they are not the determination of custody that § 287.3(d) requires, and none has been provided for Mr. Núñez Magallón. Counsel, who has been unable to confirm what occurred in the hours after the arrests, cannot confirm that the examination by a second officer and the advisals the regulation prescribes took place, or that they were given to Ms. Núñez Magallón, who is deaf, in a form she could understand (¶¶ 28, 23).

**C. Because ICE did not follow its own regulations, *habeas* must be granted as soon as practicable.**

53. A detention begun without the warrant that § 1226(a) requires, without the statutory ground for dispensing with one, and without the custody determination the regulations command within forty-eight (48) hours is a detention without the process the law prescribes (¶ 52). The remedy is the step Respondents omitted: an individualized custody determination before a neutral adjudicator, or immediate release.

**COUNT III**
**THE PAROLE EITHER EXPIRED, SO THAT THE 2026 ARRESTS REQUIRED THE PROCESS COUNT II DESCRIBES, OR IT CONTINUED, AND HAS NEVER BEEN TERMINATED**

54. Petitioners reallege the paragraphs *supra*.

**A. The rule: how parole ends, and what the regulations require at its end.**

55. Parole is a temporary release, not an admission. The Secretary may "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A); see *id.* § 1101(a)(13)(B). When its purposes "have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* § 1182(d)(5)(A).

56. The regulations prescribe two (2) ways in which parole ends, and each carries a procedure. Section 212.5(e) provides, in relevant part:

> (e) Termination of parole— (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the

> opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. . . .

8 C.F.R. § 212.5(e)(1), (e)(2)(i). On either path the regulation *requires* an act by the Department: processing and restoration of status at expiration, or written notice of termination. Neither occurred here.

**B. First alternative: the parole expired on [DATE], and the 2026 arrests were new arrests that required the process Count II describes.**

57. Respondents have identified no date on which the parole ended, and no document extends, revokes, terminates, or addresses it (¶¶ 18-19). If it terminated automatically at the end of its period, the regulation required that Petitioners "be processed in accordance with paragraph (e)(2)" and "restored to the status that he or she had at the time of parole" (¶ 55). No processing occurred, then or in the years that followed, while Petitioners filed for asylum with the Department's own adjudicating component (¶¶ 20-21). Nor did the statute's return-to-custody clause operate: it is triggered by an opinion of the Secretary that the purposes of the parole have been served, and it directs a return "to the custody from which he was paroled" (¶ 55); the record reflects no such opinion, and that custody released Petitioners years before the arrests (¶ 18). What happened on September 25, 2026 was therefore a new arrest of aliens present in the interior, lawful only with a warrant, or on the statutory ground

and with the custody determination, that Count II describes. None was made (¶¶ 51-52).

**C. Second alternative: if the parole continued, it has never been terminated in the manner the regulation requires.**

58. If instead the parole continued because Respondents neither processed Petitioners at its expiration nor took any action concerning it for years (so let us assume *in arguendo* that it was *de facto* extended by inaction from the Government), it could end only "upon written notice to the alien" following a determination by an authorized official (¶ 55). No such determination and no such notice was served on any Petitioner before the arrests, and none has been provided to counsel (¶¶ 19, 28).

59. Respondents may answer that the Notices to Appear dated September 25, 2026 are themselves the written notice, because "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole." 8 C.F.R. § 212.5(e)(2)(i). That answer fails on this record. The regulation conditions termination on the opinion of an authorized official that neither humanitarian reasons nor public benefit warrants the alien's continued presence, and Respondents have produced no such determination (¶ 28). The Notices to Appear bear the date of the arrests and are not shown to have been served before Petitioners were taken into custody, so that when Petitioners were taken into custody the parole had not been terminated by any document served on them. And no charging document has

been provided to counsel for Mr. Núñez Magallón; the only document is a notice of hearing (¶ 27).

60. On this alternative Petitioners were, on **September 25, 2026**, at liberty under the Secretary's own authorization, and Respondents took them into custody without first ending that authorization in the only way their regulation allows. A court considering the same omission, in the case of parolees arrested at a scheduled check-in, held that the absence of written notice "is not a technical defect. Rather, it goes to whether parole was lawfully terminated at all," and that "[a]t the habeas stage, where the Government justifies present custody of Petitioners by asserting parole termination, the absence of the written notice and the required predicate determination is consequential. Those requirements are the regulatory mechanisms by which parole is terminated and the parolee is restored to prior status." *Marcano*, 2026 U.S. Dist. LEXIS 13929, at *8-9. It granted the writ. *Id.* at *11.

**D. The adequate remedy is immediate release.**

61. Petitioners do not ask this Honorable Court to choose between these alternatives. The record lacks documents the regulation makes a condition precedent to what Respondents did: on the first, the processing that § 212.5(e)(2) prescribes and the warrant or custody determination that a new arrest requires; on the second, the written notice without which parole does not end.

62. Because ICE did not provide the require documents to determine Petitioner's status, Petitioners must assume they are currently in valid parole status;

therefore, their warrantless arrest and detention, without notice, is unconstitutional and this Court must order their immediate release.

**COUNT IV**
**AN AGENCY MUST FOLLOW ITS OWN REGULATIONS WHEN IT TAKES A PERSON INTO CUSTODY, AND RESPONDENTS DID NOT**

63. Petitioners reallege the paragraphs *supra*.

**A. The rule: ICE must follow their own regulations.**

64. The Supreme Court established the rule in a *habeas* case brought by an alien: regulations "with the force and effect of law" supplement the statute, and "as long as the regulations remain operative, the Attorney General denies himself the right to sidestep" them. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954). The alien was entitled to "that due process required by the regulations in such proceedings." *Id.* at 268. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). To the extent any of Respondents' actions is also reviewable agency action, the Administrative Procedure Act likewise directs a court to set aside action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The Board applies the rule to the very regulations at issue: a "[v]iolation of a regulatory requirement by a Service officer can result in evidence being excluded or

proceedings invalidated where the regulation in question serves a purpose of benefit to the alien and the violation prejudiced interests of the alien which were protected by the regulation," and "8 C.F.R. 287.3 was intended to serve a purpose of benefit to the alien." *Matter of Garcia-Flores*, 17 I&N Dec. 325, 325, 329 (BIA 1980). "Where compliance with the regulation is mandated by the Constitution, prejudice may be presumed. Similarly, where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency, it can be deemed prejudicial." *Id.* at 329. Courts apply the rule to the parole regulations: "[a]n action taken in disregard of mandatory regulatory prerequisites is unlawful and fundamentally unfair." *Marcano*, 2026 U.S. Dist. LEXIS 13929, at *6-7.

65. What the regulations required is set out in Counts II and III: a warrant issued and served by authorized officers, or a reasoned belief that each Petitioner was likely to escape before one could be obtained; identification of the officer and a statement of the reason for the arrest; examination by another officer; advice of the reasons for the arrest and of the right to counsel; a determination within forty-eight hours; and, as to the parole, processing at its expiration or written notice of its termination (¶¶ 48-49, 55).

66. The record contains none of them: no warrant, no finding, no custody determination, no notice of termination of parole, produced, served, or disclosed (¶¶ 19, 28). Each omitted provision serves a purpose of benefit to the alien: the warrant requirement protects him from arrest on an officer's unreviewed judgment; the

forty-eight-hour determination guarantees that his custody rests on a decision he can identify and contest; and the notice-of-termination requirement guarantees that a person the Secretary has released will not be retaken without being told that the release has ended and why. The Board has so held of § 287.3 (¶ 63). Of a person released on parole, the Supreme Court has said that his liberty "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss,'" and that "[i]ts termination calls for some orderly process, however informal," beginning with "written notice." *Morrissey v. Brewer*, 408 U.S. 471, 482, 489 (1972); see *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Petitioners had lived at liberty for years when they were retaken without a word of notice (¶¶ 19, 25).

67. Prejudice need not be separately shown, because "an entire procedural framework, designed to insure the fair processing of an action affecting an individual" was "created but then not followed," and because compliance with a procedure that conditions the deprivation of physical liberty is "mandated by the Constitution" (¶¶ 50, 63). It is in any event apparent: Petitioners have been confined since September 25, 2026 under no determination they can contest, with no forum in which to contest it (¶¶ 39-40). "[A]s long as the regulations remain operative," Respondents have denied themselves "the right to sidestep" them (¶ 63). Therefore, this Honorable Court should order Petitioners released.

**COUNT V**
**THE DETENTION IS GOVERNED BY SECTION 1226, NOT SECTION 1225(b), BECAUSE PETITIONERS WERE SEIZED IN THE INTERIOR OF THE COUNTRY IN 2026**

68. Petitioners reallege the paragraphs *supra*.

**A. The rule: section 1225(b) governs aliens seeking entry at the border; section 1226 governs aliens present in the interior.**

69. In this Circuit, § 1225(b)(2)(A) applies to aliens seeking entry at the border, and § 1226 governs inadmissible and deportable aliens present in the interior (¶ 34). *Rodriguez Vazquez*, slip op. at 25-26. The Eleventh Circuit, whose reasoning the Ninth Circuit found persuasive, put it this way: "The INA's text confirms that the two relevant sections on detention govern distinct classes of aliens: § 1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." *Hernandez Alvarez*, 175 F.4th at 1276. "[N]o-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here." *Id.* at 1262. The petitioners there had entered without inspection years earlier and were taken at traffic stops: they "were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry. They were only present in the country." *Id.* at 1269. Section 1226 "supplies a different rule of detention that applies to aliens DHS seeks to remove from the interior," and reaches admitted and unadmitted aliens alike: "While the

Government claims that § 1226(a) applies only to aliens who were first admitted, nothing in the provision itself supports this reading." *Id.* at 1278.

**B. Application: in 2026 Petitioners were only present in the country.**

70. Petitioners were arrested in the interior; they were not at a port of entry, were not applying for admission, and were not seeking anything from the United States (¶ 25). The Department had released them almost four years earlier, and in the years between they applied for asylum and lived in the community (¶¶ 18, 20-21). People arrested in their community years after their release are, in every sense the courts have used, "only present in the country." They are further from the border, longer in the interior, and less engaged in any effort to enter than the petitioners in *Hernandez Alvarez* and *Rodriguez Vazquez*. Section 1226 supplies the authority for their detention, and under § 1226(a) the Attorney General "may release" them on bond or conditional parole unless they are within § 1226(c) (¶ 31).

**C. Petitioners are not arriving aliens, and the parole confirms rather than alters the result.**

71. Petitioners take no position on how the Department classified them when it paroled them in 2022, and this Honorable Court need not decide it. The Department classifies Ms. Farias Lopez and Ms. Núñez Magallón as arriving aliens in their Notices to Appear (Ex. 2). They are not arriving aliens now. The regulations define an arriving alien as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q); see *United States v.*

*Gambino-Ruiz*, 91 F.4th 981, 986 (9th Cir. 2024). Petitioners were not coming or attempting to come into the United States at a port of entry when ICE arrested them in the interior in 2026. Nor did the parole that preceded the arrests leave them "seeking admission": the Ninth Circuit reads that phrase to refer to a particular point in time, the time an alien comes from outside into the country, and rejects the view that a person deemed an applicant for admission remains forever in the act of applying. *Rodriguez Vazquez*, slip op. at 35-37 (applying *Torres*, 976 F.3d at 922, 927-29). The parole also excludes Petitioners from the only paragraph of § 1225(b) that reaches aliens present in the interior. Section 1225(b)(1) applies, among such aliens, only to one "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). A court has held on that basis that a paroled alien "is not an alien described in clause (iii) and thus not subject to section 1225(b)(1)," and that one who "has been present in the United States since 2022 . . . is not 'arriving' in any ordinary sense of the word." *Alfonso v. Current Warden, Miramar ICE Field Office*, 831 F. Supp. 3d 1251, 1259 (S.D. Fla. 2026).

72. Respondents may point to the last sentence of 8 C.F.R. § 1001.1(q), under which an arriving alien "remains an arriving alien even if paroled" and "even after any such parole is terminated or revoked." That sentence assigns a classification

for the purposes of the regulations, including the custody jurisdiction of Immigration Judges (¶ 40). It cannot enlarge the detention authority that § 1225(b) confers, which the Ninth Circuit confines to aliens seeking entry at the border, and it cannot displace § 1226(a), which reaches an alien arrested on a warrant "pending a decision on whether the alien is to be removed from the United States." See *Rodriguez Vazquez*, slip op. at 26-27, 39-40.

73. If the parole ended, it ended by automatic expiration at the end of its period or, at the earliest, upon the charging documents of September 25, 2026 (¶ 19). The question is therefore whether the parole was extended by the Department's years of inaction, or whether it lapsed and left Petitioners present in the interior for years without custody. Petitioners' position is the latter, and on either answer they are not arriving aliens. If the parole continued, they were at liberty under the Secretary's authorization when they were seized, and courts have held that § 1226 governs an alien paroled at or near the border and re-detained in the interior years later: the inspection requirement of § 1225(b)(1) "is not reimposed on aliens like Petitioner who are already present in the interior after having been paroled into the United States," and "nothing in the statute requires an alien whose parole has terminated to return to a port of entry for renewed inspection or screening." *Torres v. Warden, Krome North Service Processing Center*, No. 1:26-cv-25030-KMM, 2026 U.S. Dist. LEXIS 185056, at *16 (S.D. Fla. Aug. 17, 2026). If the parole lapsed, the gap between the release and the arrests forecloses any classification of Petitioners as arriving: the

statute directs a returned parolee "to the custody from which he was paroled" (¶ 55), and that custody had long since released them; what remained were aliens present in the interior, whom *Rodriguez Vazquez* places under § 1226. Courts have so held of parolees re-detained years after release. One, considering a petitioner "who is detained at or near the border, paroled into the United States, and is re-detained years later," held that he "was not seeking entry at the border when he was re-detained; therefore, he is not subject to § 1225," and ordered release. *Gonzalez*, 2026 U.S. Dist. LEXIS 112429, at *2-3. Another held that although *Hernandez Alvarez* "did not specifically address the circumstance of an individual, like Petitioner, who had been paroled into the country and whose parole had since expired," "the reasoning of the opinion is equally applicable to Petitioner," because she "was detained within the interior of the United States—not at the border." *Mendes*, 2026 U.S. Dist. LEXIS 110023, at *2-3. Those decisions turn on where the alien was when he was re-detained, not on how he was classified when he was paroled.

74. As such, where and how Petitioners were seized will not change if Respondents move them; what would change is the law applied to those facts (¶ 35). Under the law of this Circuit the detention is detention under § 1226, and whether Petitioners may be released on bond depends on whether they are within § 1226(c)(1), which turns on the offenses with which they have been charged, for which they have been arrested, or of which they have been convicted. Count VI applies the answer to each class of § 1226(c)(1).

**COUNT VI**
**PETITIONERS ARE NOT SUBJECT TO MANDATORY DETENTION UNDER SECTION 1226(c), AND MUST BE RELEASED OR GIVEN A BOND HEARING BEFORE ANY TRANSFER**

75. Petitioners reallege the paragraphs *supra*.

**A. No class of section 1226(c)(1) describes Petitioners.**

76. Subparagraphs (A) through (D) of § 1226(c)(1) each require an offense or a terrorism ground: (A) an offense covered by § 1182(a)(2); (B) and (C) an offense or a sentence under § 1227(a)(2); (D) a ground under § 1182(a)(3)(B) or § 1227(a)(4)(B) (¶ 32). No Petitioner has been charged with, arrested for, or convicted of any offense, and nothing in the record suggests a terrorism ground (¶ 20). Subparagraphs (B) and (C) fail for a second reason: each reaches only an alien who "is deportable" under § 1227(a)(2), and every deportability ground applies only to an alien "in and admitted to the United States." 8 U.S.C. § 1227(a). Petitioners were paroled; parole is not admission (¶ 55); they have never been admitted and cannot be "deportable." That leaves subparagraph (E).

**B. Subparagraph (E) does not reach Petitioners, because none has been charged with, arrested for, or convicted of any enumerated offense.**

77. Subparagraph (E) has two parts, and both must be met. The alien must be inadmissible under § 1182(a)(6)(A), (6)(C), or (7), and he must also be "charged with, . . . arrested for, . . . convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in

death or serious bodily injury to another person" (¶ 32). Whatever Respondents may say about the first part, the record contains nothing on the second: no Petitioner has been charged with, arrested for, convicted of, or admitted committing any such offense (¶ 20). The Ninth Circuit has observed that § 1226(c)(1)(E) implies that aliens present without admission who have not committed a qualifying criminal act remain subject to § 1226(a). *Rodriguez Vazquez*, slip op. at 27.

78. Because no class of § 1226(c)(1) describes any Petitioner, each is entitled to the custody determination that § 1226(a) provides (¶ 31). This Honorable Court should order Petitioners released on reasonable conditions of supervision or, in the alternative, provided with an individualized bond hearing before an Immigration Judge, at whatever facility each is then held and before any transfer, at which release on bond or conditional parole may not be denied on the ground that the Petitioner is detained under § 1225(b) or § 1226(c).

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Honorable Court:

a. Issue within three (3) days a writ of *habeas corpus*, or an order to show cause why the writ should not be granted, directed to Respondents;

b. Order that Respondents shall not transfer or remove Petitioners from the Central District of California while this Petition is pending, and shall give counsel for Petitioners and this Honorable Court not less than forty-eight (48) hours' written notice before any proposed transfer; or, in the alternative, order that Respondents shall not remove Petitioners from the United States while this Petition is pending, and shall notify counsel for Petitioners, before relocating any Petitioner, of where and when the Petitioner is being moved;

c. Declare that Petitioners were taken into custody on **September 25, 2026** without the warrant, the finding, and the custody determination that 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 236.1(b), 287.3, and 287.8(c)(2) require, and without the processing or written notice that 8 C.F.R. § 212.5(e) requires at the end of parole, and that their detention as effected is unlawful;

d. Declare that Petitioners are detained under 8 U.S.C. § 1226 and not under 8 U.S.C. § 1225(b);

e. Declare that Petitioners are not aliens described in 8 U.S.C. § 1226(c)(1), and in particular that no Petitioner has been charged with, arrested for, or convicted of any burglary, theft, larceny, or shoplifting offense, or any other offense described in that provision;

f. Order that within seven (7) days Respondents release Petitioners from custody on reasonable conditions of supervision or, in the alternative, provide each Petitioner, at whatever facility the Petitioner is then held, with an individualized bond

hearing under 8 U.S.C. § 1226(a) before an Immigration Judge, at which release on bond or conditional parole may not be denied on the ground that the Petitioner is detained under 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(c);

g. Order that Respondents give counsel for Petitioners not less than seventy-two hours' notice of the time, date, location, and procedural requirements of that hearing, and a meaningful opportunity to prepare for and attend it;

h. Award costs and, if Petitioners prevail, attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

i. Grant such other and further relief as law and justice require, including any expedited relief necessary in light of Mr. Núñez Magallón's diabetes and ongoing dialysis requirements and Ms. Núñez Magallón's deafness and need for effective communication accommodations.

Respectfully submitted, November 3, 2026

/s/ Magdalena Cuprys
Magdalena Cuprys, Esq.
SERVING IMMIGRANTS
2100 W. Flagler Street
Miami, Florida 33135
Telephone: (305) 924-1133
E-mail: info@servingimmigrants.com
magdacuprys@gmail.com
Counsel for Petitioners

**VERIFICATION UNDER 28 U.S.C. §§ 2242 AND 1746**

Petitioners are detained in the custody of United States Immigration and Customs Enforcement at the Adelanto ICE Processing Center.

We, Luis Enrique Núñez Magallón, Rocio Farias Lopez, and María Teresa Núñez Magallón, declare under penalty of perjury under the laws of the United States of America that the foregoing Verified Petition for Writ of *Habeas Corpus* is true and correct to the best of our knowledge, information, and belief. The factual allegations of this Petition are drawn from the documents identified in its body and attached as Exhibits 1 and 2, and from information provided to counsel by Petitioners and their family.

Executed on November 3, 2026.

/s/ Luis Enrique Núñez Magallón
Luis Enrique Núñez Magallón

/s/ Rocio Farias Lopez
Rocio Farias Lopez

/s/ María Teresa Núñez Magallón
María Teresa Núñez Magallón

## CERTIFICATE OF SERVICE

I certify that on November 3, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Magdalena Cuprys
Magdalena Cuprys, Esq.
SERVING IMMIGRANTS
2100 W. Flagler Street
Miami, Florida 33135
Telephone: (305) 924-1133
E-mail: info@servingimmigrants.com
magdacuprys@gmail.com
Counsel for Petitioners

## INDEX OF EXHIBITS

**EXHIBIT 1 – Mexican Passport of Luis Enrique Núñez Magallón**

Copy of the Mexican passport establishing the identity and nationality of Petitioner Luis Enrique Núñez Magallón.

**EXHIBIT 2 – Notices to Appear and USCIS Notice**

(a) Department of Homeland Security Notices to Appear (Form I-862) issued to Rocio Farias Lopez (A246-082-984) and María Teresa Núñez Magallón (A246-082-986); and (b) U.S. Citizenship and Immigration Services Form I-797C Notice of Action (ASC Appointment Notice, Form I-589, notice date February 11, 2023) for Luis Enrique Núñez Magallón (A246-082-983).